UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:02-cr-150 |
| | ) | *Edgar* |
| ROBERT M. CANON | ) | |

**MEMORANDUM AND ORDER**

On May 3, 2005, defendant Robert M. Canon ("Canon") made a motion seeking Court approval for the further disbursement of proceeds from the sale of his real property to pay additional attorney's fees and expenses incurred by Canon at the District Court level and during the appeal to the Court of Appeals for the Sixth Circuit. [Court Doc. No. 98]. Canon is represented by attorneys John P. Konvalinka ("Konvalinka") and William T. Ramsey ("Ramsey"). The sale proceeds are deposited in a trust account maintained by the Chattanooga law firm of Grant, Konvalinka & Harrison, P.C.

Konvalinka states that as of May 3, 2005, the aggregate amount of attorney's fees and expenses owed by Canon to Grant, Konvalinka & Harrison, P.C. is $17,532.40. In his corrected declaration [Court Doc. No. 109], Ramsey states that the outstanding amount of attorney's fees and expenses owed by Canon to the law firm of Neal & Harwell, PLC is $43,524.12. Konvalinka and Ramsey have not submitted affidavits and records itemizing the hours worked and the nature of the legal services performed to support their claims for attorney's fees and expenses. The correct amount of the attorney's fees and expenses is in dispute and has not been determined by the Court.

1

Canon's motion [Court Doc. No. 98] is now ripe for review. On June 17, 2005, the Sixth Circuit rendered its decision affirming the judgment of conviction against Canon. Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Oliver,* 397 F.3d 369 (6th Cir. 2005), the Sixth Circuit vacated only the sentence and remanded Canon's case to this District Court for resentencing. *United States v. Canon*, 141 Fed. Appx. 398, 2005 WL 1432778 (6th Cir. June 17, 2005). On remand, this District Court entered an amended judgment of conviction against Canon on December 6, 2005, resentencing him. [Court Doc. No. 114]. The amended judgment of conviction again orders Canon to pay $3,183,710 in restitution.

After reviewing the record, the Court concludes that Canon's motion seeking Court approval for the disbursement of proceeds from the sale of his real property to pay additional attorney's fees and expenses [Court Doc. No. 98] is **DENIED**. The lien of the United States of America is enforced as a federal tax lien and it takes priority over any inchoate, unperfected lien for attorney's fees and expenses that may be held at this juncture by Canon's attorneys. 18 U.S.C. §§ 3613(c), 3663A(d), and 3664(m)(1)(A). All remaining funds in the trust account, including any interest earned thereon, shall be disbursed to the United States of America to pay restitution as ordered in the amended judgment of conviction entered against Canon on December 6, 2005. [Court Doc. No. 114]. Consequently, it is not necessary for the Court to reach the separate issue whether the amount of attorney's and expenses claimed by Canon are excessive. There is no need for the Court to determine the amount of attorney's fees and expenses.

**I.     Facts**

On September 25, 2003, the jury returned a guilty verdict at Canon's trial. [Court Doc. No. 49]. On October 10, 2003, Canon made a motion to allow the sale of his real property to

2

pay his existing and estimated financial obligations, including existing and expected future attorney's fees. [Court Doc. No. 51].

On October 29, 2003, the Court granted the motion in part. [Court Doc. No. 60]. The Court allowed Canon to sell the real property on the condition that all sale proceeds be deposited and maintained in a trust account by one his attorneys subject to the continuing jurisdiction, authority, and supervision of the Court. The order provided that none of the proceeds in the attorney's trust account shall be transferred or disbursed without the Court's prior approval.

On March 1, 2004, the Court entered the first judgment of conviction against Canon. [Court Doc. No. 73]. Canon was ordered to make restitution to several victims including $981,993 to the federal Medicare program. On March 19, 2004, the United States filed a judgment lien of record against Canon in Bedford County, Tennessee, on behalf of all victims entitled to restitution in the total amount of $3,183,710.

In the meantime, Canon made arrangements to have the real property sold at public auction. To effect the sale and to enable Canon to convey clear title to prospective buyers, it was necessary for persons holding liens on the real property to execute releases of the liens. On or about May 28, 2004, Canon made a motion for the Court to allow the disbursement of funds to pay various debts and expenses including attorney's fees. [Court Doc. No. 83]. Although Canon and the United States were able to reach agreement concerning the payment of various debts and expenses associated with the sale of the real property, the parties did not agree on the amount of Canon's attorney fees and expenses.

Canon and the United States Attorney negotiated the terms of an agreed order to enable the sale of the real property to go forward. On June 18, 2004, the Court entered an agreed order [Court Doc. No. 85] which provides *inter alia* that the law firms of Grant, Konvalinka & Harrison, P.C. and Neal & Harwell, P.C. "shall have a substitute lien in the same order of priority as its original deed of trust vis-a-vis other creditors upon the sale proceeds in exchange for the delivery of a partial release of its deed of trust at the time of closing." The agreed order further provides: "The United States government shall have a substitute lien in the same order of priority as its original judgment vis-a-vis other creditors upon the sale proceeds in exchange for delivery of a partial release of its judgment lien at the time of closing."

The agreed order [Court Doc. No. 85] did not rule on and dispose of Cannon's motion [Court Doc. No. 83] to allow the disbursement of a portion of the sale proceeds to pay his attorney's fees and litigation expenses incurred in the criminal case. The June 18, 2004 agreed order did not make any decision with regard to two key issues: (1) the amount of a lien for attorney's fees; and (2) the priority of liens as between the United States of America and Canon's attorneys. These issues were left to be decided another day.

The sale of the real property subsequently occurred. After specified expenses and debts were paid as authorized by this Court, the remaining balance of the sale proceeds was deposited into a trust account maintained by Grant, Konvalinka & Harrison, P.C.

On August 30, 2004, the Court heard oral argument on Canon's first motion [Court Doc. No. 83] to allow disbursement of funds to pay his attorney's fees. One of the primary disputes concerned how to determine the amount of attorney's fees that would be incurred in the future concerning Canon's appeal to the Sixth Circuit. After the oral argument, the parties submitted an

4

agreed order [Court Doc. No. 93] which the Court entered on September 2, 2004. It provided that Canon's attorneys were authorized to disburse $329,296.72 to pay attorney's fees and expenses. Canon's attorneys were ordered to hold the remaining balance of approximately $355,640.56 in the trust account. Neal & Harwell's estimated minimum fees of $10,000 for the appeal are to be held in the trust account pending a determination of the actual amount of the attorney's fees and expenses incurred on appeal.

While the appeal was pending in the Sixth Circuit, Canon made the instant motion on May 3, 2005, seeking Court approval to allow the disbursement of funds from the trust account to pay the additional attorney's fees and expenses. [Court Doc. No. 98].

The United States government opposes Canon's motion. There are disputes concerning priority of liens, and the amount of the attorney's fees and expenses claimed by Canon's counsel. The United States contends that its judgment lien on the proceeds derived from the sale of Canon's real property takes priority for the purpose of enforcing the order of restitution in the judgment of conviction. Prior to trial, defense counsel for Canon recorded a deed of trust on Canon's real property to secure payment of their attorney's fees and expenses. Copies of the deed of trust and the accompanying promissory note have not been submitted to this Court for review. The government argues that the Court must review the deed of trust and promissory note to determine what extent, if any, that the lien held by Canon's attorneys is valid and may take priority over the lien of the United States. Beyond the question of priority of liens, the government contends that the amount of attorney's fees and expenses claimed by Canon's attorneys is excessive.

In June 2005, this Court ordered the parties to more fully brief the question whether a lien of Canon's attorneys takes priority over the lien of the United States. The parties submitted

5

briefs but they did not discuss whether the Court's order of restitution is treated as a federal tax lien and whether the lien for attorney's fees has either been perfected or is inchoate.

At the conclusion of the sentencing hearing held on remand on November 28, 2005, the Court discussed this matter on the record in open court with the United States Attorney and attorneys Konvalinka and Ramsey. The Court directed counsel for the parties to do the following. The Court set a briefing schedule for the parties to submit supplemental briefs addressing the issue of priority of liens. More specifically, the Court advised counsel that they need to research and address the questions whether the order of restitution in the judgment of conviction is treated as a federal tax lien, whether the lien for attorney's fees is inchoate, and whether a federal tax lien takes priority over an inchoate lien for attorney's fees. The Court also directed Canon's attorneys to file copies of the deed of trust and promissory note so that the Court may determine the validity and amount of their lien. The Court wanted to be in a position, if necessary, to determine the extent to which the amount of the attorney's fees and expenses covered by the promissory note and secured by the deed of trust may have already been paid and satisfied by the previous payment of $355,640.56 authorized by the Court in the September 2, 2004 agreed order [Court Doc. No. 93].

On December 15, 2005, Canon, by and through attorneys Konvalinka and Ramsey, filed a notice [Court Doc. No. 115] stating that Canon does not intend to submit a supplemental brief regarding the priority of liens. Canon stands on the present record and requests that the Court grant his motion. Canon's attorneys have not filed copies of the deed of trust and promissory note to establish the validity and amount of their lien as directed by the Court.

**II.   Analysis**

The motion filed by defendant Canon on May 3, 2005, seeking Court approval for the disbursement of proceeds from the sale of his real property to pay additional attorney's fees and expenses incurred by Canon both at the District Court level and during his appeal to the Court of Appeals for the Sixth Circuit [Court Doc. No. 98] must be denied for two reasons.

### A. Lack of Proof of Validity and Amount of Lien for Attorney's Fees and Expenses

The Court finds that Canon and his attorneys have not met their burden of showing that the attorneys currently have a valid lien and the amount of the lien. Although the Court explicitly directed Canon's attorneys to file copies of the deed of trust and promissory note to establish the validity and amount of their lien, they have declined and failed to do so.

The Court agrees with the United States that it is not clear from the record whether Canon's attorneys have a valid lien at this time and the amount of any such lien for attorney's fees and expenses. The lien for attorney's fees is entirely dependent upon the terms of a deed of trust and promissory note executed by Canon. Canon's attorneys have already been paid a total of $329,296.72 for fees and expenses. [Court Doc. No. 93, Agreed Order]. To determine the existence and amount of any lien held by Canon's attorneys at this point in time, it is necessary for Canon to file copies of the deed of trust and promissory note with the Court. If the promissory note has already been fully satisfied and paid in full, then the attorneys do not have a viable, existing lien on any of the remaining the proceeds derived from the sale of Canon's real property. Because the deed of trust and promissory note have not been submitted for review, the Court cannot find that Canon's attorneys presently have a valid lien under Tennessee law on any of the remaining proceeds in the trust account.

7

Canon argues that it is not necessary for the Court to review the deed of trust and promissory note. [Court Doc. No. 100]. Canon relies on the language in the agreed order [Court Doc. No. 85] that the law firms of Grant, Konvalinka & Harrison and Neal & Harwell "shall have a substitute lien in the same order of priority as its original deed of trust vis-a-vis other creditors upon the sale proceeds in exchange for the delivery of a partial release of its deed of trust at the time of closing." Canon contends that the agreed order did not limit the amount of proceeds in the trust account to which his attorneys have priority.

This argument by Canon fails. The June 18, 2004 agreed order [Court Doc. No. 85] does not purport to decide what is the correct amount of any lien held by the Canon's attorneys. Rather, the agreed order merely provides for a substitute lien in the same order of priority as the original deed of trust. The agreed order preserves the status quo of the priority of liens as between the United States and Canon's attorneys. This was done to allow the sale of Canon's real property to go forward. As discussed *supra*, the June 18, 2004 agreed order does not decide: (1) the amount of a lien for attorney's fees; and (2) the priority of liens as between the United States of America and Canon's attorneys.

Accordingly, the Court concludes that Canon and his attorneys have not met their burden of showing that the attorneys currently have a valid lien on any of the remaining proceeds in the trust account.

  **B.**  **Federal Tax Lien of United States for Restitution Takes Priority**

Even if we assume *arguendo* that Canon's attorneys may have a valid lien which applies to all or a portion of the proceeds in the trust account, there is a second reason why Canon's motion [Court Doc. No. 98] must be denied.

8

Any lien currently held by Canon's counsel under Tennessee law to secure the payment of their additional attorney's fees and expenses is inchoate and has not been perfected to the point that the lien would take priority over the lien of the United States government. The specific amount of attorney's fees and expenses covered by Canon's motion made on May 3, 2005 [Court Doc. No. 98] is in dispute, uncertain, and has not been determined by this Court. The lien of the United States for restitution in the amended judgment of conviction is treated as a federal tax lien and it takes priority over the inchoate lien for attorney's fees and expenses asserted here by Canon's counsel.

The United States argues that the priority of liens must be determined according to Tennessee law. The government relies on Tenn. Code Ann. §§ 47-28-103(c) and *Home Federal Bank, FSB, of Middlesboro, Kentucky v. First National Bank of Lafollette, Tennessee*, 110 S.W.3d 433 (Tenn. Ct. App. 2002). [Court Doc. No. 103]. The government's position is incorrect. The United States overlooks federal statutes and caselaw governing the enforcement of criminal judgments ordering restitution, and the enforcement and priority of federal tax liens.

An order of restitution in a federal criminal case is treated and enforced as a federal tax lien. The priority of orders of restitution and federal tax liens is governed by federal law, not Tennessee state law. Although state law determines what rights an individual possesses in property, federal law determines whether a federal tax lien has priority. *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir. 2000); *Hensley v. Harbin,* 196 F.3d 613, 615-16 (6th Cir. 1999); *United States v. Dishman Independent Oil, Inc.,* 46 F.3d 523, 526 ( 6th Cir. 1995); *Dowdy v. Charter Financial Group, Inc.,* 122 F. Supp.2d 1347, 1351 (M.D. Fla. 2000); *see also, United States v. Security Trust & Savings*

9

*Bank of San Diego*, 340 U.S. 47, 49 (1950) ("The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question.").

The instant case involves a judgment of conviction against Canon where this Court ordered mandatory restitution under 18 U.S.C. § 3663A. 18 U.S.C. § 3663A(d) provides: "An order of restitution under this section shall be issued and enforced in accordance with section 3664."

18 U.S.C. § 3664(m)(1)(A) provides that an order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of Title 18, United States Code; or by all other available and reasonable means. 18 U.S.C. § 3613(c) provides that an order of restitution made pursuant to 18 U.S.C. § 3663A or § 3664 is a lien in favor of the United States on all property and rights to property of the defendant as if the liability were one for a tax assessed under the Internal Revenue Code. The order of restitution is the same as a federal tax lien. *Dowdy,* 122 F. Supp.2d at 1351 "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under" 18 U.S.C. § 3613(b).

Federal tax liens do not automatically have priority over all other liens. Absent a federal statute to the contrary, priority of liens under federal law is generally governed by the common law principle that "the first in time is the first in right." *United States v. McDermott*, 507 U.S. 447, 449 (1993); *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85 (1954); *Wayne County Board of County Commissioners v. Mendel, Inc.*, 22 Fed. Appx. 488, 491 (6th Cir. Oct. 29, 2001); *Hensley,* 196 F.3d at 615; *Dishman Independent Oil,* 46 F.3d at 526; *In re Terwilliger's Catering Plus, Inc*., 911 F.2d 1168, 1176 (6th Cir. 1990); *Dowdy,* 122 F. Supp.2d at 1351.

In determining the priority of federal tax liens, the courts deem a competing state law lien to be in existence for "first-in-time" purposes only when the state law lien has been "perfected" and is no longer inchoate. A competing state lien must be perfected to the degree that nothing more needs to be done in order for the state lien to take priority over a perfected federal tax lien. For a competing state lien to be perfected and choate, it must establish the identity of the leinor, the property subject to the lien, and the specific amount of the lien. *McDermott*, 507 U.S. at 449-50; *New Britain*, 347 U.S. at 84; *United States v. Pioneer American Ins. Co.*, 374 U.S. 84 (1963); *Wayne County Board*, 22 Fed. Appx. at 491; *Blachy,* 221 F.3d at 905-06; *Hensley,* 196 F.3d at 615; *Dishman Independent Oil,* 46 F.3d at 526-27; *Terwilliger's Catering*, 911 F.2d at 1176; *Dowdy,* 122 F. Supp.2d at 1351.

The problem here for Canon's attorneys is that the specific amount of their state law lien for additional attorney's fees and expenses has not been definitely established. The judgment lien of the United State for restitution against Canon, which is enforced as a federal tax lien, is superior and takes priority over the inchoate state lien for attorney's fees now being asserted by Canon's lawyers in the May 3, 2205 motion [Court Doc. No. 98]. When the amended judgment of conviction was entered by this Court against Canon on December 6, 2005 [Court Doc. No. 114] ordering restitution, the specific amount of the additional attorney's fees and expenses now being sought by Canon [Court Doc. No. 98] was in dispute and had not been determined by the Court. The federal tax lien of the United States takes priority because the state lien for these additional attorney's fees and expenses is inchoate and had not been "perfected" when the federal tax lien came into existence upon entry of the amended judgment of conviction on December 6, 2005.

11

While the Court today, after the entry of the amended judgment of conviction and order of restitution on December 6, 2005 [Court Doc. No. 114], can determine the amount of the additional attorney's fees and expenses incurred by Canon, this would not change or affect the priority of the federal tax lien over the state tax lien for attorney's fees. An unperfected and inchoate state law lien, upon becoming perfected and choate, does not "relate back" in a way that permits it to take priority over a pre-existing federal tax lien. Federal law makes no provision for the subordination of a federal tax lien through the use of a "relation back" doctrine. *Security Trust & Savings Bank of San Diego*, 340 U.S. at 50; *Wayne County Board*, 22 Fed. Appx. at 492; *Blachy,* 221 F.3d at 905; *Dishman Independent Oil,* 46 F.3d at 527.

Canon's attorneys argue that their lien takes priority over the lien of the United States for two reasons. First, Canon's attorneys contend that they filed a deed of trust before the United States obtained the judgment of conviction and order of restitution. They urge the Court to follow the general federal rule of determining priority of liens – "first in time, first in right." This argument lacks merit. Canon has failed and refused to provide a copy of the deed of trust to the Court. Canon wants the Court to render a decision in his favor based on an alleged deed of trust and promissory note but he has not bothered to submit copies of these documents to the Court for review. Moreover, the federal rule of "first in time, first in right" weighs in favor of the United States because the order of restitution against Canon is enforced as a federal tax lien. The priority of the lien held by the United States must be analyzed and enforced based on the federal statutes that explicitly govern orders of restitution and federal tax liens. When it comes to the priority and enforcement of federal tax liens, this Court is required to follow and apply the federal statutes that directly govern federal

12

tax liens. The lien of Canon's attorneys is not "first in time, first in right" because their lien for additional attorney's fees and expenses is inchoate and has not been perfected.

Canon's attorneys next seek to invoke the law-of-the-case doctrine by arguing that the previous agreed orders of this Court establish that their lien for attorney's fees has priority. This argument fails. A review of the agreed orders previously entered by this Court show that Canon's reliance on the law-of-the-case doctrine is misplaced. The Court's prior agreed orders did not adjudicate the question of priority of liens. At no time in the agreed orders has this Court ever made a determination that the lien of Canon's attorneys based on a deed of trust takes priority over the lien of the United States. The agreed orders merely preserved the status quo and made certain that each party retained the same priority of liens as before, whatever that priority may be. The issue of priority of liens remained an open question to be decided in the future. It is in this memorandum opinion that the Court for the first time reaches a final decision on the merits concerning the priority of liens. The law-of-the-case doctrine is not applicable in these circumstances.

Even if we assume *arguendo* that the law-of-the-case doctrine is applicable (which it is not), the Court has the authority and discretion to reconsider the question of priority of liens and to set aside or modify any of its prior rulings and orders on the subject. The Court also has the authority to clarify its prior orders to the extent that they may be ambiguous or misconstrued. The bottom line is that the Court today holds that the order of restitution in the amended judgment of conviction against Canon shall be enforced as a federal tax lien and it takes priority over any inchoate lien held by Canon's counsel for additional attorney's fees and expenses. To the extent that this holding may conflict or be inconsistent with any prior orders in this case, the Court hereby reconsiders and overrules its prior orders. To the extent that the prior orders of this Court may be

13

ambiguous or misconstrued on the question of priority of liens, this memorandum opinion and order shall serve to clarify the Court's decision. In sum, any and all prior orders entered by this Court shall be construed as being entirely consistent and harmonious with the holding in this memorandum opinion and order on the question of priority of liens. This is sufficient to resolve any argument presented by Canon based on the law-of-the-case doctrine.

**III.     Conclusion**

Accordingly, the motion filed by defendant Canon on May 3, 2005, seeking Court approval for the disbursement of proceeds from the sale of his real property to pay additional attorney's fees and expenses incurred by Canon at the District Court level and during his appeal to the Court of Appeals for the Sixth Circuit [Court Doc. No. 98] is **DENIED**.

The lien of the United States of America, which is enforced as a federal tax lien under 18 U.S.C. § 3613(c), is superior to and takes priority over any inchoate lien that may be held by Canon's attorneys. On or before March 1, 2006, all remaining funds being held in the trust account at the law firm of Grant, Konvalinka & Harrison, P.C., including any interest earned thereon, shall be disbursed to the United States of America to pay restitution as ordered in the amended judgment of conviction entered against defendant Robert M. Canon on December 6, 2005. [Court Doc. No. 114].

SO ORDERED.

ENTER this *30th day of January, 2006*.

*/s/  R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE